**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**IVAN HARVEY,**

      **Plaintiff,**

**vs.**                                  **CASE NO. 5:08CV339-RH/AK**

**ART TEAL,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that

Defendant Art Teal, a correctional officer at Holmes CI, used excessive force against

him. Defendant has moved for summary judgment (doc. 35), and after considerable

discovery, Plaintiff has responded. (Doc. 91).

I.    **Allegations of the Second Amended Complaint (doc. 21)**

Plaintiff claims that on April 29, 2008, Defendant Teal placed him in handcuffs

and then began slamming him against a brick wall and metal bars by the door going into

the medical building, then punched him directly in his chest incision from recent bypass

surgery, then slammed him to the ground where he kicked him repeatedly in his mid

and lower back. When other officers arrived, Defendant Teal allegedly ceased the

assault. Plaintiff was given a DR for assault on a corrections officer, but "no formal

outside charges were filed," because no injuries were sustained by Teal. Plaintiff,

however, contends that he has been left in a wheelchair from the injuries he sustained from the incident.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

No. 5:08cv339-RH/AK

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

**III.    Defendant's Relevant Rule 56(e) evidence** (doc. 35)

a)    <u>Disciplinary Report dated April 29, 2008 (exhibit B)</u>

Officer Teal states that he was escorting Plaintiff to a pre-confinement medical examination on a previous infraction when Plaintiff began yelling and would not stop, then Plaintiff pulled away from Teal and struck him on his right shoulder with his left elbow and then across Teal's left shoulder with his cane.  After Plaintiff dropped his cane, Teal placed him on the ground.

No. 5:08cv339-RH/AK

b)    Affidavit of Art Teal (exhibit C)

Teal attests that on April 29, 2008, he was escorting Plaintiff for a pre-confinement physical when Plaintiff began screaming and being disruptive.  Plaintiff then pulled away from him and struck him with his left elbow hitting him in the right shoulder.  Plaintiff then hit Teal in his left shoulder with a cane.  After dropping his cane, Plaintiff was placed on the ground and escorted on to his medical examination.  Teal sustained injuries to his shoulder, back and elbow and contends that no force was used except in defense from the attack initiated by Plaintiff.  Teal pushed Plaintiff's hands away from him, grabbed his shoulder and back and placed him on the ground.

c)    Incident Report (exhibit D)

Officer Teal's statement is consistent with his affidavit.  The shift supervisor notes on the incident report show that Teal had some abrasions on his right back forearm and right lower back, and plaintiff was placed in DC due to his combative behavior.  The review of the incident found use of force was necessary to prevent Teal from further injury, that Plaintiff had no injuries, and it was recommended that Plaintiff be reviewed for close management.

Officer Johnson was assigned as Tower #2 Officer at the time of the incident and witnessed Harvey yelling and then elbowing Teal in the right side and hitting him with his cane.  He saw Teal put Plaintiff face down on the ground and Officers Slay and Forehand respond and ultimately escort Plaintiff to the medical department.

Officers Slay and Forehand both stated that they found Plaintiff on the ground in handcuffs and escorted him to medical without further incident.  Officer White retrieved

**No. 5:08cv339-RH/AK**

Plaintiff's cane, which was left on the sidewalk, and Officer Music began videotaping the incident at approximately 12:30 p.m. Sergeant Jones supervised Plaintiff during his medical examination, and there was no physical incident at this time. Additional documentation shows that the video camera took pictures of Plaintiff and he had no visible signs of injury. Plaintiff's statement was that Teal tried to throw him against the building and when that did not work he took Plaintiff in a half way head lock, punched him in the mouth, and that he was handcuffed during the entire incident.

> d)  Affidavit of David Johnson (exhibit E)

Johnson was assigned to Tower 2 at the time of the incident and overheard Plaintiff yelling and then saw Plaintiff elbow Teal and hit him with his cane. He witnessed Teal use minimal force to put Plaintiff to the ground and no force was used once he was on the ground.

> e)  Post-Use-of-Force Report dated April 29, 2008 (exhibit F)

Inmate complained of mouth pain, left ankle pain, and pain to his center/epigastric region following the altercation with security. The nurse examining him found no edema, bruising, redness in any area on his body and ordered no treatment.

> f)  Pre-Special Housing Health Assessment dated April 29, 2008 (ex. G)

Plaintiff was examined by another nurse who noted his complaints were ankle, mouth and epigastric chest area. No physical signs of injury were noted.

> g)  Employee Post-Alteration ER record dated April 29, 2008 (ex.H)

**No. 5:08cv339-RH/AK**

Art Teal was examined and found to have swelling to the top of the left shoulder, redness to the area and abrasions were noted. Slight swelling and redness was also noted to the back of the right arm with abrasions noted on his right back.

h)    Witness Statement from Ivan Harvey dated May 1, 2008 (ex. I)

Plaintiff describes being put in a headlock by Teal, but because he was taller than Teal he stood up and Teal's feet were dangling, which made him mad. Then, Teal hit him in the mouth loosening his teeth.

i)    Nursing Assessment dated May 6, 2008 (exhibit L)

Plaintiff reported back and leg pain with weakness in left leg causing him to go down to the floor requiring a stretcher. He was referred to Dr. Andem, who determined that he should be given Motrin and discharged to confinement with a walker. On May 7, 2008, he initiated sick call and x-rays were ordered which showed a normal lumbar spine with no evidence of fracture or other abnormality.

j)    Affidavit of Dr. Frank Johanson (exhibit O)

Dr. Johanson reviewed Plaintiff's medical record and found that he sustained no injury following the incident with Defendant Teal, but that his records showed that he had fractured his back in 2004 and had complained of weakness in his lower back in March 2008. He complained on April 30, 2008, of back pain resulting from the incident, but would not come out of his cell for sick call without a wheelchair even though he had been observed walking earlier. X-rays were taken on May 5, 2008, which were "unremarkable." Dr. Johanson was of the opinion that any back problems Plaintiff had were not the result of the altercation with Defendant Teal.

**No. 5:08cv339-RH/AK**

k)      Medical Record Discharge Summary dated 6/22/07 (doc. 66).

Entry shows that Plaintiff had coronary artery bypass surgery in 2005, with a history of multiple gunshot wounds, and lumbar fracture with hardware.

## IV.      Plaintiff's Response (doc. 91)

a)      Response to "interrogatory" by Derrick James

Inmate James said he saw the altercation between Plaintiff and Defendant on April 29, 2008, and stated:

> Honestly on that day, I was sitted right next to the window and I first heard the officer/inmate exchanging words back and forth at each other.  As they got closer to the door an physical fight took place.  I seen officer Teal, grab Inmate Harvey, around the waist area trying to get Inmate Harvey, on the ground.  After about a minute of aggressive force, they both fell in the grass area to the left of Medical as other officers arrive.

b)      Inmate Sick-Call Request dated April 29, 2008

Plaintiff states, "I have a very loose tooth and a serious toothache which has initiated a severe headache.  My back is giving me more pain also.  I also need my nitro scrip."

In response to the question "When did problem/symptoms start?" Plaintiff wrote "4-29-09 approximately 12:20 p.m. when I was assaulted by staff while being handcuffed."

Written on the request is "Routine-Denial 4/30/08 C. Gilmore."

c)      Medical Request to Dr. Andem dated 6/9/08

No. 5:08cv339-RH/AK

Plaintiff complains of increased back pain and requests an orthopedic consultation, which was granted.

d)      Consultant's Report dated July XX, 2008 and MRI results (exs. D and E)

An MRI was ordered which revealed L5-S1 disc degeneration with associated disc bulge contributing to foramina stenosis and impingement of the exiting nerve root. L2-3 level mild disc bulge with central disc protrusion mildly compressive.

e)      Inmate Sick-Call Request dated July 13, 2008 (ex. G)

Plaintiff claims he was injured on April 29, 2008, and requests a wheelchair and better pain medications.

f)      Inmate Sick-Call Request dated January 29, 2009 (ex. J)

Plaintiff seeks better pain medication stating that he was injured on April 29, 2008, and nothing has been done for his continuing back pain.

g)      General Affidavit (exhibit O)

Plaintiff claims that he has never fractured his back nor does he have any hardware in his back such that his only injury resulted from the April 29, 2008 incident.

h)      Consultation Request dated 9/4/08

Dr. Nazareno requested from Dr. Lord further management instructions from Dr. Lord after the MRI results were done to which Dr. Lord responded that the MRI showed minimal degenerative changes.

i)      Letter from Dr. Kees dated March 8, 2007

Dr. Kees notes that a four-vessel bypass was done on 9/19/05.

**No. 5:08cv339-RH/AK**

**V.     Analysis**

Under the Eighth Amendment force is deemed legitimate in a prison setting as

long as it is used "in a good faith effort to maintain or restore discipline [and not]

maliciously and sadistically to cause harm." Whitley v. Albers, 475 U.S. 312, 320-21

(1986), quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973).  In the context of

quelling a prison disturbance, the Supreme Court explained that "whether the measure

taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether

force was applied in a good faith effort to maintain or restore discipline or maliciously

and sadistically for the purpose of causing harm.  Whitley at 320-321.  See also Skritch

v. Thornton, 280 F.3d 1295 (11th Cir. 2002).  A variety of factors are considered in

determining whether the force was applied maliciously or sadistically, including the need

for force, the relationship between that need and the amount of force used, the threat

reasonably perceived by the prison officials applying it, and any efforts made to temper

the severity of the force used.  Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).  However, a

*de minimis* use of force, as evidenced by no injury, cannot support a claim of excessive

use of force.  Hudson, at 7.

This court finds persuasive the definition of *de minimis* applied by a district court

in the Northern District of Texas:

> A claim by a prisoner of an injury in prison he received in an unprovoked
> assault or excessive use of force by the guards or a failure to protect from
> other inmates should utilize the same approach to the nature of the injury
> and whether it actually falls under the new statute with regard to being a
> physical injury as to how people in a free world setting in exercising their
> day-to-day medical care would treat such injuries. Just as an example,
> there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled
> muscles, back aches, leg aches, etc., which are suffered by free world

**No. 5:08cv339-RH/AK**

people in just every day living for which they never seek professional
medical care. Thus, an appropriate de minimis standard would be whether
as a common-sense category approach to the injury; would the injury
require or not require a free world person to visit an emergency room, or
have a doctor attend to, give an opinion, diagnosis and/or medical
treatment for the injury? In effect, would only home treatment suffice?

***

A physical injury is an observable or diagnosable medical condition
requiring treatment by a medical care professional. It is not a sore muscle,
an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up
to two or three weeks. People in the regular and ordinary events and
activities in their daily lives do not seek medical care for the injuries they
receive unless it obviously appears to be of a serious nature, or persists
after home remedy care.

Luong v. Hatt, 979 F. Supp. 481, 486 (N. D. Texas 1997). While the Eleventh Circuit

has not adopted this precise definition, it has been applied by the United States District

Court for the Middle District of Florida, Watkins v. Trinity Service Group, 2006 WL

3408176, and by district courts in Alabama and Georgia, which are included in the

Eleventh Circuit. See Daughtry v. Moore, 2009 WL 1151858 (S.D. Ala.); Johnson v.

Moody, 2006 WL 898135 (S.D. Ala); Talley v. Johnson, 2008 WL 2223259 (M.D. Ga.);

Johnson v. Bainbridge Public Safety, 2007 WL 2593969 (M.D. Ga.); Radford v.

Johnson, 2006 WL 2927578 (M.D. Ga) This definition and the Luong case has been

cited positively by both the Third and Sixth Circuits as well. See Perez v. United States,

2009 WL 1426765 (3rd Cir.) and Jarriett v. Wilson, 162 Fed. Appx. 394 (6th Cir. 2005).

Plaintiff describes a particularly brutal attack involving slamming his head against

a brick wall, being kicked repeatedly in the back, hard blows to his mouth such that his

teeth were loosened, hard blows to his chest area and a surgical incision site from

"recent" heart surgery, and claims that the attack was of such intensity that his back,

**No. 5:08cv339-RH/AK**

which was not previously injured, was so seriously injured that he required a wheelchair. Yet, there were no visible injuries, no redness, no swelling, no abrasions, no bruises, anywhere on his body as reported by two nurses and recorded on video by another corrections officer. Eyewitnesses to the incident report that Plaintiff was the aggressor, striking Defendant Teal with his elbow and cane, and Teal's injuries, as noted by medical staff, are consistent with these reports. The lack of injuries on Plaintiff are, on the other hand, highly inconsistent with his version of the incident. The veracity of Plaintiff's report of the incident is further suspect given the exaggeration about his "recent" surgery. His allegation that Defendant struck him hard, "directly in my incision" from a "recent four (4) vessel by-pass surgery," was shocking and egregious until Plaintiff's own proof showed that this surgery was performed on **September 19, 2005**, nearly three years before the incident with Defendant Teal. Even Plaintiff's eyewitness, Derrick James, does not support the brutal attack described in the complaint. James attests that he saw about a minute of physical fighting and then he saw both men fall to the ground.

Plaintiff makes much of the fact that Defendants are wrong about a pre-existing back injury, particularly that he had fractured his back and had hardware in place. His contention is that this proves his back was injured as a result of the altercation with Defendant. There is some discrepancy between the medical discharge summary that indicates a lumbar fracture with hardware (doc. 66) and x-rays that showed no such fracture, (doc. 35, exhibit N), but the court finds this discrepancy to be immaterial. The precise type of pre-existing injury is not the issue, it is the fact that some type of back

**No. 5:08cv339-RH/AK**

problem had occurred and Plaintiff claims adamantly that none existed.  As Defendants note, Plaintiff checked "yes" to the question on his intake questionnaire that he came into prison in 2004 with a back injury.  (Doc.104, exhibit D).  Also, he was treated on March 19, 2008, for weakness in his lower back and was walking with a cane on the day the incident occurred.

Defendant has moved for sanctions because of Plaintiff's misrepresentation of the facts and argues that Plaintiff was on notice of the proof against him and yet persisted int his lawsuit.  Plaintiff reviewed all his medical records (doc. 104, exhibit F), and knew that there was evidence that he came into the DOC with a pre-existing back injury and knew that there were no medical records supporting any injury following the altercation with Defendant Teal.  He knew that there were eyewitnesses to the incident and that there was video of him immediately following the incident which would reveal that he suffered no injuries.  The Court would add that he also knew the evidence would show that he was not bound to a wheelchair after the incident and that the evidence would show that he had not had recent heart surgery.

Given the particularly egregious allegations of abuse and injury made by the Plaintiff that are clearly baseless and the fact that he was fully apprised of the evidence that would reveal the falsity of his allegations, the Court herein recommends that the following sanctions be imposed pursuant to Florida Statute §944.279(1), which provides:

> At any time, and upon its own motion or on motion of a party, a court may conduct an inquiry into whether any action or appeal brought by a prisoner was brought in good faith. A prisoner who is found by a court to have

**No. 5:08cv339-RH/AK**

> brought a frivolous or malicious suit, action, claim, proceeding, or appeal in any court of this state or in any federal court, which is filed after June 30, 1996, or to have brought a frivolous or malicious collateral criminal proceeding, which is filed after September 30, 2004, or who knowingly or with reckless disregard for the truth brought false information or evidence before the court, is subject to disciplinary procedures pursuant to the rules of the Department of Corrections. The court shall issue a written finding and direct that a certified copy be forwarded to the appropriate institution or facility for disciplinary procedures pursuant to the rules of the department as provided in s. 944.09.

However, prior to imposing such sanctions the Court must afford Plaintiff fair notice that his conduct may warrant sanctions and the reasons why. See In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995). Notice and the reasons why are set forth herein, and Plaintiff is hereby given an opportunity to respond by filing Objections to this Report and Recommendation, within the time frame set forth below.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 35) be **GRANTED**, and that Plaintiff's second amended complaint (doc. 21) be **DISMISSED** for failure to state a claim upon which relief may be granted and as frivolous and malicious pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

It is further recommended that Defendant's Motion for Sanctions (doc. 104) be **GRANTED**, and that the Order adopting these recommendations include a finding that Plaintiff knowingly brought false information before the Court, which shall be sent by

No. 5:08cv339-RH/AK

certified copy to the Florida Department of Corrections for appropriate disciplinary

sanctions pursuant to Florida Statute §944.279(1).

      **IN CHAMBERS** at Gainesville, Florida, this   **5**$^{th}$ day of January, 2010.


                                  *s/ A. KORNBLUM*

                                  **ALLAN KORNBLUM**

                                  **UNITED STATES MAGISTRATE JUDGE**


                    **NOTICE TO THE PARTIES**


      **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**